**RICHARDSON CO. et al. v. HOOD RUBBER CO.**

(District Court, D. Massachusetts. December 14, 1926.)

No. 2519.

Patents ⟨⟩328—Woodley, 1,156,122, for fibrous composition and process of manufacture, held not infringed.

The Woodley patent, No. 1,156,122, for a fibrous composition and process of manufacture, is for a composition of matter, and the product of the process is a homogeneous fibrous gummy product, especially designed for a roofing material, and in view of proceedings in the patent office the patent cannot be construed to cover a molded article, as a solid acid resistant battery box for automobile batteries.

In Equity. Suit by the Richardson Company and James C. Woodley against the Hood Rubber Company. Decree for defendant.

Marcus B. May, Local Solicitor, of Boston, Mass., and D. Anthony Usina and Wm. H. Davis, both of New York City, and Marston Allen, of Cincinnati, Ohio, for plaintiffs.

Harold C. Haskell and Ellis Spear, Jr., both of Boston, Mass., and Ernest F. Mechlin and Wm. F. Hall, both of Washington, D. C., for defendant.

LOWELL, District Judge. This was a bill in equity to restrain the infringement of letters patent No. 1,156,122, granted October 12, 1915, to James C. Woodley, on an application which was filed in February, 1915, as a substitute for the original application of

16 F.(2d)—50

October 20, 1913. The patent is now owned jointly by the two plaintiffs.

The plaintiffs complain of the manufacture by the defendant of boxes for storage batteries to be used with automobiles. These boxes were first put on the market in 1923, the defendant and the plaintiff corporation each having devised a successful box at about the same time. When storage batteries were first used for automobiles, the boxes which held them were merely containers for the separate cells of the battery, each in its own box. Storage battery containers, as they were then called, were usually made of wood. Subsequently boxes were devised which held the separate cells of the battery in one container, without a box for each separate cell. The principal requisite of such a box is that the material of which it is composed shall not be subject to injury by the sulphuric acid of the battery cells. It must also be firm enough to stand sudden shocks and to retain its solidity at a temperature as high as 125° Fahrenheit. Rubber was used with success, but was found to be very expensive. After many experiments, a bituminous compound was devised, which consists of asphalt, asbestos, and a kind of cotton waste known as "cotton linters." The battery boxes are made in a mold, while the composition is in a plastic state. This compound, when molded into boxes, becomes hard. It was found to have the requisite firmness, to be acid resistant, and to remain solid at 125° Fahrenheit. The infringement complained of is the manufacture by the defendant of boxes like this.

The patent in suit is for a "fibrous composition and process of manufacture." It relates especially to the manufacture of roofing material. There are 24 claims, the first 16 of which are for the process, and the last 8 for the product. The claims in suit are numbered 3, 11, 12, 13, 15, 17, 18, 19, 20, and 22. Those relating to the product were not given much attention at the trial; the plaintiffs' attack being directed especially to the infringement of the first five of those above enumerated, which cover the process of manufacture. These five claims read as follows:

"3. The process of producing a substantially homogeneous fibrous gummy mass, which consists in disintegrating a gummy mixture comprising a fibrous mass in intimate adhering contact with a gummy asphalt without destroying the fibrous condition of said mass, so as to produce a homogeneous fibrous gummy product, substantially as described."

"11. The process of producing a sub-

stantially homogeneous fibrous gummy mass, which consists in bringing together fibrous material and a binder of gummy material in such proportions that the fibrous material comprises not more than 50 per cent. by weight of the total and the mixture is of a semisolid gummy consistency, and mechanically disintegrating the fibrous material while in intimate adhering contact with the binder, to produce a substantially homogeneous composition of substantially discrete interlaced fibers cemented together by the binder.

"12. The process of producing a substantially homogeneous fibrous gummy mass, which consists in mixing fibrous material with a bituminous binder, consisting of asphalt in such proportion that the fibrous material comprises not more than 50 per cent. by weight of the total, and the mixture is of a semisolid gummy consistency, and then disintegrating the fibrous material while in intimate adhering contact with the binder to produce a substantially homogeneous fibrous composition of substantially discrete interlaced fibers cemented together by the binder.

"13. The process of producing a substantially homogeneous fibrous gummy mass, which consists in mixing fibrous material with a closely adherent bituminous binder having greater extensibility than said fibrous material, and then extending said binder sufficiently to disintegrate the fibrous material."

"15. The process of producing a substantially homogeneous fibrous gummy mass, which consists in mixing fibrous material with a closely adherent bituminous binder having greater extensibility than said fibrous material, and repeatedly extending said binder to cause the fibers to be coated with the binder and to be distributed and interlaced throughout the binder."

It was not denied by the defendant that a successful roofing material could be made under the patent, though its manufacture proved too expensive to be commercially profitable. It is not contended that the patent is absolutely void, and the first question to be decided in this case is as to its scope. If it should be narrowly interpreted, the defenses set up at the trial, of anticipation and prior public use, need not further be considered.

It may be remarked in passing that the specification is an example of a custom too prevalent in the framing of letters patent—of unnecessarily multiplying the claims. Sixteen of them relate to the process of manufacture. This number might well have been reduced to three. (Claims 1, 2, 4-10, and 16 refer to superficial coating of the fibrous material; 3, 11, and 12 deal especially with mixing; 13, 14, and 15 call attention to the extensibility of the bituminous binder.)

The plaintiffs' contention is thus stated in their brief:

"The manufacture from bituminous compounds of articles of commerce (roofing materials, floor coverings, hard electrical insulating parts, such as terminal plates, socket plugs, etc., battery jars, and the like) was a highly developed one in 1915. The workers in that art understood how to select the ingredients for admixture with the bituminous binder for these different uses. Woodley's addition to the art was a new method of distributing the fibrous constituent in the bituminous binder. It is directly applicable to the mixing of all the known mixtures of the prior art, with or without fillers, provided those mixtures contain a bituminous binder and a fibrous substance to be dispersed within that binder.

"To give a homely illustration, the situation was precisely the same as though some one should now invent or discover a new process for dispersing yeast in dough. Having been told how to make that new dispersion in a dough batch for white bread, for example, the cook would at once know how to make it in whole wheat bread or raisin bread, etc."

In my opinion, this contention is not supported by a proper interpretation of the specification. The only fibrous composition whose manufacture is described is that of a roofing material. It is true that the specification contains the usual saving clause:

"I have described my product with particular reference to making roofing sheets in rolls, but it may be produced in the form of shingles, flat sheets, tiles, etc. Also, on account of the superior strength, insulating and wearing properties of my composition, I may employ it advantageously in other arts, as, for example, in making paving blocks, floor tiles, floor coverings, storage battery containers, pipes or conduits, electric insulating, etc. I may also, if desired, incorporate with my material coloring matter, or mineral or other filler. In fact, various modifications and departures from the specific materials and steps described may be made by those skilled in the art without departing from the invention as described in the following claims." (Specification, p. 4, lines 33 to 51.)

This is merely the expression of the patentee's day dream—an inventor's "castle in Spain."

Two principal ways of making the roofing material are described in the specification.

(1) Mixing waste paper with liquefied asphalt:

"The paper is preferably moist or wet, and its addition to the binder quickly cools the latter to a gummy condition. The mixture of fibrous material and the gummy binder is then worked in a kneading and mixing machine." (Specification, p. 2, lines 5–10.)

(2) The second method is as follows:

After mixing the paper with the liquefied asphalt, it is allowed to cool.

"The coated paper, having been allowed to cool to a semisolid consistency, is in a suitable machine forced under great pressure through one or more perforated plates (or repeatedly through the same plate), from which it emerges as a mass of fibrous asphalt, in which it is practically impossible to distinguish particles of fibrous material. * * *" (Specification, p. 2 lines 45–52.)

The product brought about by the operations above described is the finished product.

"The proportions may vary within a considerable range, but should be such that when cooled the material is semisolid and gummy." (Specification, p. 1, lines 89–92.)

The first one of the claims sued on may be taken as typical. Claim 3 reads as follows:

"3. The process of producing a substantially homogeneous fibrous gummy mass, which consists in disintegrating a gummy mixture comprising a fibrous mass in intimate adhering contact with a gummy asphalt without destroying the fibrous condition of said mass, so as to produce a homogeneous fibrous gummy product, substantially as described."

The roofing material made under the patent is appropriately described as a "homogeneous fibrous gummy product." It thus clearly appears that the expressions in the first 16 claims refer to the completed product. The defendant's battery box is in no sense a gummy product. As compared with the roofing material of the patent, it is like the rock of Gibraltar in contrast to the so-called "pitch lake" of Trinidad, which resembles the plaintiffs' product, as it is gummy, though firm enough to support a man.

The proceedings in the Patent Office leave little doubt as to the proper construction of the specification.

In the first application there were at the start 18 claims. The first communication from the Patent Office made the point that the claims were improperly joined. Under date of April 3, 1914, the Examiner wrote as follows:

"The claims fall into the following groups: Claims 1 to 9, inclusive, and 14, to a process of forming a composition of matter; claims 10 to 13, for a process of forming a molded article; claims 15, 16, and 18, to the product of the first group of process claims; and claim 17, to a molded article. The first and third groups of claims are apparently of such a nature as to admit of their joinder. The subject-matter of the second and fourth groups is, however, distinct and divisible from the remaining groups. The claims are rejected for misjoinder."

The patentee then made an amendment, in which he chose the claims relating to the process of forming a composition of matter and the product of this process. He stated as follows:

"In reply to the Examiner's requirement of division, applicant elects to prosecute the first and third of the groups into which the Examiner divides the claims; that is, claims 1 to 9 and claims 14, 15, 16, and 18."

Although this application was withdrawn, and a new one filed, no claims for the process of forming a molded article or for the completed article were ever afterward introduced. The patentee is bound by this action.

The Patent Office construed the claims as for a process in the production of a composition of matter, and allowed the product claims to be put in for the same composition. It refused two sets of claims—one for a process of making a molded article, and the other set for the molded article itself. It thus clearly appears that the proceedings in the Patent Office, acquiesced in by the patentee, prevent the plaintiffs from now successfully contending that the process claims of this patent were merely for an intermediate stage in the production of a molded product.

After a careful consideration of the terms of the specification, I have come to the conclusion that the claims do not cover the process of manufacture of a firm, acid resistant battery box, such as the defendant makes. This result is safer for the plaintiffs, as it saves them from the danger of having their patent, if it were more broadly interpreted, declared invalid for lack of invention.

Bill dismissed.